IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,         )<br>                                                            )<br>            Plaintiff,            )<br>                                                            )<br>vs.                                              )<br>                                                            )<br>JERRELL JACKSON,                   )<br>                                                            )<br>            Defendant              ) | 8:09CR271<br><br>FINDINGS AND<br>RECOMMENDATION |

      This matter is before the court on Jerrell Jackson's (Jackson) Motion to Suppress (Filing No. 24).  Jackson is charged in the Indictment with possession of a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count I), and criminal forfeiture for the firearm under 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c) (Count 2).  See Filing No. 15.  Jackson seeks suppression of any statements made or evidence found as a result of his contact with Omaha Police Department (OPD) officers on April 17, 2009, near 19th and Pinkney Streets in Omaha, Nebraska.  See Filing No. 24.

      An evidentiary hearing was held on Jackson's motion on September 22, 2009. Jackson was present for the hearing along with his appointed counsel, Assistant Federal Public Defender Julie B. Hansen.  The United States was represented by Assistant U.S. Attorney Frederick D. Franklin.  During the hearing, the court heard the testimony of OPD Officers Ryan L. Sedlacek (Officer Sedlacek) and Brett Becker (Officer Becker).  A transcript of the hearing (TR) (Filing No. 35) was filed on October 1, 2009, whereupon the motion to suppress was deemed submitted.

**FINDINGS OF FACT**

      Officers Sedlacek and Becker have each been a police officer with the City of Omaha for over nine years (TR. 3-4, 22).  The officers are currently assigned to the Criminal Investigation Bureau for the North Gang Suppression Unit (TR. 3, 22).  On April 17, 2009, Officers Sedlacek and Becker were working the shift from 7:30 p.m. to midnight and patrolling the area around Kountze Park near 19th and Pinkney Streets (TR. 4-5, 23). The park is considered a "directed patrol" area because there is a high amount of gang

activity, including gun and gang violence, which takes place in and around the park (TR. 5, 17). Officer Sedlacek has personally recovered numerous firearms from individuals and gang members in the park (TR. 17). On that day each of the officers were wearing a black tactical vest with the word "police" on the front and back and carrying a duty belt including a firearm, flashlight, and radio (TR. 14).

On April 17, 2009, at approximately 9:00 p.m., the officers observed a blue 2009 Chrysler Sebring parked in the park in a public parking stall, but partially obstructing a parking stall marked for handicap parking (TR. 5, 13, 23, 28). The officers drove up to the vehicle and observed Jackson, who had been standing near the driver's side front of the Sebring, quickly walk away from the Sebring and "hastily" throw something into a public trash container (TR. 5-6, 17). Officer Sedlacek recognized Jackson, who he believed to be a gang member, from "numerous" documented and undocumented police contacts over the last three years (TR. 6, 17). Officer Sedlacek knew Jackson to be a felon whose conviction was related to gun crimes (TR. 10, 19).

Officer Sedlacek asked Jackson and several others who were present near the Sebring to stay where they were and Officer Sedlacek walked over to the trash container (TR. 7-8, 13, 38). Officer Sedlacek saw a set of car keys lying directly on top of other discarded items in the trash container (TR. 7). Attached to the keys was a tag indicating the vehicle, one that matched the description of the Sebring, had been rented (TR. 8-9). The officers detained those people who were present for further investigation (TR. 8, 38).

Officer Becker conducted an exterior search of the Sebring (TR. 10, 24). Officer Becker detected the odor of marijuana emanating from the Sebring through partially opened windows (TR. 24). Officer Becker observed the butt of a silver firearm, through the driver's window, on the driver's side floor board of the Sebring (TR. 11, 24). Officer Becker observed the hammer of the firearm was cocked back (TR. 24-25). After further investigation, the officers determined the firearm, a .45 caliber Kimber semi-automatic pistol, had been stolen (TR. 11-12, 25). The officers arrested Jackson based on the officer's discovery of the firearm (TR. 11, 32). Jackson made no statements of evidentiary significance to Officer Sedlacek (TR. 11).

Officers towed the Sebring to the OPD impound lot (TR. 12).  The officers determined the Sebring had been rented by Tosha Holland from Enterprise Rent-A-Car (TR. 12).  Ms. Holland stated she and Tiffany Jackson had permission to drive the Sebring (TR. 26).  Ms. Holland also stated Tiffany Jackson had given Jackson permission to drive the Sebring on April 17, 2009 (TR. 12, 26).

## LEGAL ANALYSIS

Jackson seeks to suppress all evidence and statements made by him, which were derived from his detention and arrest on April 17, 2009.  Specifically, Jackson contends he was walking in the area of 17th and Pinkney Streets when he was seized by OPD officers. Jackson argues his search, seizure, detention, and arrest were without legal justification. In Jackson's motion, he seeks suppression of evidence including statements he may have made related to cellular telephones.  **See** Filing No. 25 - Brief p. 1.  However, the government concedes it does not plan to introduce evidence of Jackson's statements at any trial in this matter (TR. 43-44).  Additionally, no evidence of any statements made by Jackson were elicited during the suppression hearing.  Based on these events, the defendant withdraws the portion of his motion related to statements he may have made (TR. 44).

**A.    Standing**

To claim Fourth Amendment protection, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *United States v. Boyster*, 436 F.3d 986, 992 (8th Cir. 2006).  The reasonableness of the expectation of privacy must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143-44 n.12 (1978); **see also** *Smith v. Maryland*, 442 U.S. 735, 740-41 (1979).  "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they

were searched or seized illegally." *United States v. Barragan*, 379 F.3d 524, 529-30 (8th Cir. 2004) (**quoting** *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).

The Eighth Circuit has recognized that:

> The Supreme Court has enunciated a two part test to determine whether a person has a legitimate expectation of privacy in the place searched or the object seized. A court must determine: (1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable.

*United States v. Stallings*, 28 F.3d 58, 60 (8th Cir. 1994) (internal citations omitted). "Fourth Amendment rights are personal rights that may not be asserted vicariously." *Barragan*, 379 F.3d at 529. Therefore, the court "must first determine whether [the defendant] had a legitimate expectation of privacy in the area searched or the item seized." *Gomez*, 16 F.3d at 256. The Eighth Circuit has explained:

> Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

*Id.*

The driver of a vehicle may have standing to contest the search of a vehicle when the driver is not the owner, but is using the vehicle with permission of the lawful owner. **See** *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998). The evidence obtained by the officers indicate Jackson had been given permission to use the Sebring. However, such permission for use does not end the inquiry. In this case, the officers found Jackson near the Sebring, but found the Sebring's keys in a trash container, apparently abandoned.

"A warrantless search of abandoned property does not violate the Fourth Amendment, as any expectation of privacy in the item searched is forfeited upon its abandonment." *United States v. James*, 353 F.3d 606, 615-16 (8th Cir. 2003); **see** *Abel v. United States*, 362 U.S. 217, 241 (1960). "Whether an abandonment has occurred is determined on the basis of objective facts available to the investigating officers, not on the

basis of the owner's subjective intent." *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997). To determine whether an item is abandoned, the court evaluates the circumstances including denial of ownership and physical relinquishment of the property. *James*, 353 F.3d at 616; *United States v. Caballero-Chavez*, 260 F.3d 863, 866-67 (8th Cir. 2001); **see** *United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006) (holding property abandoned when thrown away by suspect during pursuit); **but see** *United States v. Wilson*, 953 F.2d 116, 118-19 (4th Cir. 1991) (noting where defendant's conduct in abandoning property is clearly the result of an illegal seizure, recovery of contraband may also be fruit of illegality); *United States v. Jones*, 374 F. Supp. 2d 143, 156-57 (D. D.C. 2005).

In this case, the abandonment of the Sebring's keys, if by Jackson or another, occurred prior to any show of authority by the officers.[1] The officers did not make any contact with Jackson or the others until after Officer Sedlacek observed Jackson move away from the Sebring and toward the trash container. Jackson makes no argument he was illegally seized prior to the abandonment of the Sebring's keys, even if he was seized immediately upon the arrival of the officers. Although the officers may have evidence Jackson had lawful possession of the Sebring prior to his contact with police, Jackson has failed to establish he had any expectation of privacy in the Sebring after he walked away from it and when the keys found were discarded in the trash container.

## B. Officer Contact and Search

The defendant argues the officers lacked legal justification to approach and detain Jackson and search the Sebring. There is no dispute the nature of the initial contact was not consensual. The court will evaluate the detention and search assuming Jackson has standing to contest the search of the Sebring. No items of an evidentiary nature were obtained from Jackson for purposes of this matter.

Encounters between the police and citizens fall into three general categories:
(1) consensual or voluntary encounters, which are not seizures and do not implicate

---

[1] There has been no contention Jackson inadvertently dropped the keys into the trash container. In fact, Jackson continues to deny possession of the Sebring or its keys (TR. 42).

5

the Fourth Amendment, **see, e.g.,** *Florida v. Bostick*, 501 U.S. 429 (1991); *Florida v. Royer*, 460 U.S. 491 (1983); *United States v. Griffith*, 533 F.3d 979, 983 (8th Cir. 2008); *United States v. Vera*, 457 F.3d 831, 834-35 (8th Cir. 2006);

(2) investigative detentions, which are seizures of limited scope and duration within the meaning of the Fourth Amendment and must be supported by a reasonable articulable suspicion of criminal activity, **see, e.g.,** *United States v. Sokolow*, 490 U.S. 1 (1989); *Reid v. Georgia*, 448 U.S. 438 (1980); *Terry v. Ohio*, 392 U.S. 1 (1968); *Griffith*, 533 F.3d at 983-84; *United States v. Saenz*, 474 F.3d 1132, 1136 (8th Cir. 2007); and

(3) physical arrests, which must be supported by probable cause. *U.S. Const. amend. IV*.

The government has the burden to prove the initial encounter was voluntary, or that justification otherwise existed for each increasingly intrusive restraint on the defendant. **See** *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004); *United States v. Escobar*, 389 F.3d 781, 785 (8th Cir. 2004) ("The government bears the burden of showing consent was freely and voluntary given and not a result of duress or coercion, and the burden cannot be discharged by showing mere acquiescence to a claim of lawful authority."). "Determining which police-citizen contacts fall within the protections of the Fourth Amendment and which do not is fact intensive and turns on the unique facts of each case." *Griffith*, 533 F.3d at 983.

The initial encounter was not consensual, but began as an investigatory detention. The officers immediately told Jackson he must stay where he was. Jackson was not placed under arrest until the officers located a firearm in the Sebring. However, the officers may have conducted a pat-search of Jackson and/or his companions prior to that time. Even so, "[i]t is well established, of course, that a law enforcement officer may detain a person for investigation without probable cause to arrest if the officer 'has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.'" *United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005) (**quoting** *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation and citation omitted)). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances."

*United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994). "Reasonable suspicion does not, however, exist solely on the basis of an officer's hunch. To satisfy the Fourth Amendment, officers must be able to articulate some minimal, objective justification for a *Terry* stop." *Griffith*, 533 F.3d at 983-84.

In this case, the officers observed several men standing near a vehicle that was parked partially obstructing a handicap parking stall. The men were in a park known for criminal gang activity including gun and gang violence. Additionally, one of the officers had specific experience with one of the individuals, Jackson, and knew him to have engaged in criminal behavior, including gun crimes, in the past. As the officers began to approach the vehicle, Officer Sedlacek observed Jackson quickly walk away from the vehicle and drop something into a trash container. Once the detention of the individuals began, it lasted only a few minutes before the officers discovered the keys for the Sebring in the trash container and a firearm in the Sebring.

Whether or not the officers intended to cite the driver of the Sebring for a parking violation, the officers were justified in making contact with the men who reasonably appeared to be in possession of a vehicle that was violating the parking laws. None of the individuals claimed an ownership of the Sebring. However, the officers reasonably believed Jackson had a connection to the vehicle by Jackson's conduct near the vehicle and near the trash container. Regardless of the Sebring's ownership, the officers acted reasonably based on their observation of individuals located in a high-crime area near an improperly parked vehicle.

Knowing Jackson had a felony conviction and based on the officers' reasonable belief Jackson was associated with Sebring, once the officers located the firearm they had probable cause to arrest Jackson on firearm charges and search him incident to that arrest. *Chimel v. California*, 395 U.S. 752 (1969). The right to conduct such a search incident to arrest is absolute and not determinative of any concern for officer safety or destruction of evidence. Searches of a person incident to arrest are per se reasonable under the Fourth Amendment. *United States v. Robinson*, 414 U.S. 218, 226 (1973).

In this matter, the officers were merely conducting an investigation into a parking offense. However, in connection with this investigation, the officers were further justified

in the temporary investigatory detention of the men based on the high crime nature of the area and Jackson's conduct upon seeing the officers. The detention was not unreasonably long before the officers determined Jackson was reasonably associated with the Sebring that contained a loaded firearm. Accordingly, the court finds the officers were justified in conducting a brief investigatory detention of Jackson. In any event, the firearm either was, or would have been, discovered in plain view while walking around the unattended illegally parked vehicle even absent the detention of the Jackson and the others. Moreover, Officer Becker's observations while walking around the Sebring provided probable cause for a search of the vehicle. Upon consideration,

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Jerrell Jackson's Motion to Suppress (Filing No. 24) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to these Findings and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of these Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 3rd day of November, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge